We have a real exciting docket. We just advise you about a couple of our traffic systems. Number one, we will try to keep within the time limits that are prescribed. The first argument is more complex, perhaps, than the other ones today, although we'll just see what happens. But the yellow light tells you you have two minutes. When the red light comes on, we ask you to conclude your argument. Also, we are familiar with the briefs and the record excerpts. We do appreciate record citations when those are appropriate. And so with that, we call the first case, number 2240328, Consumers Research v. Consumer Product Safety Commission. Thank you, Your Honor. May it please the Court, I'm Mark Freeman for the government. The district court in this case made two errors. The first is that the district court erred in entering partial final judgment under Rule 54B. The judgment should be vacated and the case should be sent back to the district court for the district court to conclude the adjudication of this case. The second error, if the court reaches the merits, is that the district court erred in over-reading SALA law. SALA law does not stand for the proposition that all traditional independent agencies, in the words of the Chief Justice in SALA law, have had their forecast removal protection abrogated. The court may decide that question someday. It may decide it in this case, but it has not decided it yet. For those reasons, we'd ask the court first to vacate the judgment and remand or in the alternative reverse. I welcome the Court's questions. That's it? I can keep going. I just wanted to make sure we had an opportunity for any opening questions the Court had. Why don't you make your best case about 54B in light of the fact that it looks to me that the ACA case resolved similar issues? Sure. Let me take the ACA case and then go to the merits of the 54B thing. First, this Court's decision in the ACA case, the 54B judgment was not contested in that case. There was no adjudication of that question in this court. But I do think the Court's footnote 11 of that opinion highlights why it's different from this case. Footnote 11 of that opinion notes that plaintiffs in that case had multiple independent constitutional theories for the ACA. There was the Article I claim on which the Court issued its 54B judgment. There was a Fifth Amendment claim. There was a Tenth Amendment claim. And when the government went back to the district court in that case and said, district court, can you please clarify why this was a proper 54B judgment, the court said the plaintiffs would be entitled to proceed on their other claims whether their first claim is rejected or accepted on the merits. And here, that's not the case, and you don't have to believe me. You can believe counsel themselves. In district court, my friends told the district court that if you rule on the threshold legal question, then the only remaining question for them is the remedy. What do they get from it? That's at 677 in the record. And then specifically, and here I'm speaking at 691 in the record, my friend told the district court that if they ruled in our favor, if the district court were to say on the merits that there was no separation of powers violation, that the court could go ahead and enter final judgment on all three claims. And the court said the reason for that is because they're all dependent on the same legal proposition. Now, it can't be that a claim under Rule 54B is independent if you rule in favor of the plaintiffs but inextricably intertwined with the other claims if you rule against the plaintiffs. The 54B argument is really, it just boils down to a disagreement about standing, right? No, I don't think it boils down to a disagreement about standing, Your Honor. I mean, okay, so suppose we conclude that plaintiffs do have independent standing to assert their first claim. Does that mean you lose your Rule 54B argument? No, and let me explain why. I think at the end of this case, of course, we would oppose it on the merits and their other defenses and so on. But I think at the end of this case, the district court could enter a declaration like the one it has entered here. The reason it could do so, though, Your Honor, is that the declaratory judgment that plaintiffs seek in their Count I is tied up with, the reason they have standing to seek it is tied up with their other claims. And here I just actually point the court to their own complaint. If you look at Count I in their complaint, this is at pages 35 to 37 of the record, you'll see that they say we are entitled to a declaratory judgment because we are frequent FOIA requesters, and that declaratory judgment would relieve us of the need to comply with this unconstitutionally promulgated rule and to pay these fees, and we would be entitled to our documents. That's specifically paragraphs 62 and 63 of the complaint. They tie the two together. So we're not here contesting that at the end of the case, as part of a declaration, as part of a ruling that, for example, the FOIA fee processing copying fee rule increase from 10 cents to 15 cents a page violated the Constitution and they were entitled to have that rule set aside. Of course, we would argue that that's not proper under Collins, but suppose the district court reached that result. As part of giving relief in that, as to that, they could issue a declaration. But the reason they could do that is because the declaration is tied up with giving relief on that claim. 54B doesn't allow the district court to break off an independent legal premise of the litigation and enter final judgment just on that. And I think that question is important because if this court, I don't need to tell the court about the importance of the final judgment rule. If the court had a . . . What is the best case in Fifth Circuit for your theory? This means they've got a claim under the FOIA, they've got a claim under the APA, and they've got a constitutional claim. And the answer is that all of those are the same claim for purposes of 54B, Your Honor, and let me explain why. They all, as the plaintiffs told the district court, turn on the same legal question. And there isn't anything else. Their FOIA claim, as they say, their third claim, is the same as the first claim. They've already received all the documents they asked for. They haven't been charged any fees. The FOIA claim that they exhausted through the agency was simply that they were entitled to have that FOIA request ruled on by a constitutionally supervised agency. And you can look at that in the record. That was their claim. They're not here arguing that the search was inadequate or there are exemptions that were improper or that the redactions weren't correctly done. Okay. Go ahead. So their argument, their FOIA argument, is just that the agency isn't correctly supervised. Well, suppose we were to . . . I mean, all you ask for in that regard is for us to vacate the judgment and remand. Correct. Well, we do that occasionally. And what we do is we retain jurisdiction. And that would be appropriate, Your Honor, if the court chooses to do that. What's the benefit for you if you do that? The benefit is that the final judgment rule entitles the government to see what the final judgment is before we decide whether to appeal. And just a preview here, our view, as I think the court knows, is that the Collins prejudice inquiry, which the district court here did not reach, should preclude plaintiffs from recovering any relief as to the FOIA rule that they challenge or their FOIA claims. So if, at the end of the day, the district court were to enter . . . well, of course, I'm setting aside the merits here. In our view, the district court shouldn't have ruled against us on the constitutional claim. But accepting arguendo that it was going to do that, what the district court should have done was say, okay, I'm prepared to enter this judgment, but we conclude that there's no prejudice from the issuance of this rule under Collins, because plaintiffs can't show that the president would have objected to a FOIA fee increase. And as a result, they take nothing on that, and that rule stands. And that reasoning would, of course, map across to many of the other rules—we would think all of the other rules—that the CPSC has issued. And then the Solicitor General . . . If that's the case, why did you just send us this 28-J about the CPSC exercising independent authority to try to ban my gas stove? So that wasn't our 28-J letter. That was my friend's 28-J letter. Oh, I see. Well, what do you say about that? Well, what we say about that is that . . . You're either independent or you're not independent. So as to that, what the Commission has done is commence a proceeding for information. That's not the question in front of the Court today. But if the Court . . . if the . . . Let's suppose hypothetically—plaintiffs are right—suppose hypothetically the Commission goes on and issues a ban, although that's one of the very few things the Commission . . . only one of the many things the Commission could do. Suppose they issue a ban. At that point, plaintiffs would have a Collins argument. They would have an argument that that rule—not the one in front of us, not anything in this case—should be set aside because of Collins, because of prejudice. Now, our view is they can't make that showing in this case. And the District Court should have entered final judgment addressing those questions, because those questions matter. They matter to what the judgment before this Court is. They matter to what the significance of your ruling will be. And the Solicitor General, speaking from the Department's perspective, should have had the prerogative to decide whether to let the judgment be or whether to appeal. But instead, what the District Court did was enter final judgment, not partial summary judgment, which the Court would have been entitled to do. That would have been interlocutory and not appealable. It entered final judgment, which this Court has explained in the Zapata case is a final judgment for all purposes without reaching severability or . . . Yes, Your Honor, and obviously that sentence is there, and we understand it. We just think you have to read the opinion in context for its holding. The question in Salah law, as the Court knows—the Chief Justice framed it in the first paragraph of the opinion—was whether to extend Humphrey's executor's holding as to multi-member agencies, bipartisan balance requirements, et cetera, to the single-headed agency like the CFPB. And the Chief Justice explained that then-Professor Warren's proposal for the CFPB was a multi-member commission, and this is all in the Chief Justice's account in Part 1 of the opinion, that Congress chose to depart from that in a critical respect. And the Court framed the question as whether that critical respect raised a constitutional problem. And at the end of the opinion, the Court comes back and says, having found this constitutional violation, Congress could cure it by making the CFPB a multi-member commission. Now, my friends disregard that sentence. They say, well, that was just the end of the opinion. It doesn't really count. But I think if they're going to come to you and say, you have to read the opinion for all it says, and you have to take this language seriously in this one sentence, then they have to take that sentence seriously, too. And in our view, we can read the tea leaves like everyone else. We understand there are a lot of challenges to Humphrey's executor out there, and maybe the Supreme Court will one day, in this case or some other, decide what Justice Thomas said in his sale of law concurrence it should do, that Humphrey's executor should be overruled. But that's a mind—I'm sorry. Well, suppose we consider ourselves bound by Humphrey's executor. Is it not also the case that if this multi-member commission did wield executive power, that that would be challengeable? In other words, the FOIA, the—it was rulemaking that led to the increase in fees, was it not? It was, yes. And that's executive, is it not? It is, yes. And we're not here—I'm not here arguing that the CPSC does not exercise substantial executive power. We just don't think that that is the sum total of the ruling in sale of law. We can see that in a couple ways. I mean, there is a dictum in sale of law. There's also the dictum in sale of law that the court—that Congress could cure the problem by making it a multi-member agency, even though, by hypothesis already found in the opinion, the CFPB also exercised substantial executive authority. We agree that plaintiffs can bring a challenge to a rule. We also agree that plaintiffs could—if this court agrees with us, and suppose you reach the merits, if you agree with us in reverse and say, Humphrey's executor may be on its last legs, but it's still standing and the district court was wrong to declare the agency unconstitutional now, we agree that plaintiffs can file a cert petition and say the Supreme Court should overrule Humphrey's executor. That question is presented, but it hasn't been ruled on yet in its prerogative to do that. If you forgive me, I'm sort of reminded of the major questions doctrine as a sort of CF. I mean, on their view, sale of law held unconstitutional the Board of Governors of the Federal Reserve because it exercises significant executive authority, and the Federal Trade Commission, and the FERC, all of them are invalid on their view. Now, that's a big thing, and I think the Supreme Court probably reserved that judgment for itself, and I think you can see that actually in Justice Thomas's concurrence. He says, I'm glad we did what we did today in sale of law, but, you know, there's still this, as he would put it, plague of independent agencies upon the land, and the conclusion of his separate opinion in the case is, I hope we have the will to overrule Humphrey's executor when that question gets to us. And our only submission to you today is that that question has not yet gotten to the court, and when it does, it will do what it does. But, for now, like in the National Coalition of Men case, the right answer in this court is to reverse the district court, if you reach the merits, reverse the district court and say, not now. Maybe if the Supreme Court takes the case, but not now. All right. Thank you, sir. You have time for rebuttal?  Thank you, Your Honor. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, Brett Shumate on behalf of Consumers Research and BITU. The commission structure is unconstitutional because the President can only remove the commissioners for cause. Under the Supreme Court's removal precedence, the general rule is that the President must have unrestrained authority to remove executive officers The commission does not fit within the narrow Humphreys-Executor exception to that general rule because it's undisputed that the commissioners exercise substantial executive power. Just like the CFPB and SELA law, but unlike the FTC of 1935 and Humphreys- Executor, this court cannot and should not extend Humphreys-Executor to approve another restriction on the President's removal authority that the Supreme Court has not yet blessed. I'd like to turn first to standing, Your Honor, because, Judge Will, you asked about that, and then I'll transition to Rule 54B because I do think the two questions rise and fall together. So on standing, Your Honors, Free Enterprise Fund and Cochran make clear that plaintiffs who are subject to action by unconstitutionally structured agencies have standing to seek prospective declaratory relief because a separation of powers violation creates a here and now injury that a court can remedy with a declaratory judgment. Here, the plaintiffs are subject to the commission's adjudication of their statutory rights under FOIA without presidential accountability. It's no different than the accounting firm in Free Enterprise Fund that was subject to oversight by an unconstitutionally structured agency or the plaintiff in Cochran who was subject to an adjudication of her rights by an unconstitutional ALJ. It's no different here. So second, on Rule 54B, Free Enterprise Fund also resolves the government's statutory court, it's only raising here, because the plaintiffs in that case were entitled to a standalone declaratory judgment on their separation of powers claim. That's the same relief that we seek in this case on the exact same claim. Under your theory, can any person anywhere in the U.S. sue any government agency for a separation of powers violation so long as they have filed or intend to file a FOIA request? I think they could try, Your Honor, but that case would go nowhere for a couple of reasons. So for example, if a guy off the street submitted one FOIA request, if the commission grants that FOIA request, the case is going to be moot. If the commission denies the FOIA request, it's unlikely that that plaintiff could get any retrospective relief under Collins. Our case is very different because our plaintiffs . . . But under your theory, a plaintiff like that could sue. I think they . . . Any plaintiff anywhere could sue any agency if they have filed or intend to file a FOIA request with that agency. I think it would be difficult for that kind of person to establish a future injury, a prospective injury, if they don't have a history like our plaintiffs do of submitting . . . To me, that just sort of looks like a generalized grievance that standing law is meant to proscribe. Not in this case, Your Honor, because our plaintiffs are intertwined with the commission's adjudication of their statutory rights. They have submitted dozens of FOIA requests to the commission. The commission has granted some, denied others. They have other FOIA requests still pending at the commission.  The commission is exercising its authority over the plaintiffs when it adjudicates their statutory rights. For example, the commission has to make a number of decisions in its adjudication of a FOIA request. First, it has to decide whether it's going to respond, whether it's going to charge fees, whether it's going to grant a fee waiver. Then, the ultimate decision, whether it's going to produce documents or not. It has to decide whether FOIA exemptions apply or whether the documents are disclosable. That is all an adjudication of someone's statutory rights. I know FOIA feels different, but it's really not different at the end of the day. What the government is really arguing here is that our plaintiffs are not proper plaintiffs to bring a separation of powers challenge. I have three responses to that. First, there's no FOIA exception to the separation of powers or Article III standing. The Supreme Court has considered challenges to removal restrictions in a number of contexts. In the enforcement context, pre-enforcement context, to a request for back pay. The Supreme Court has recognized that FOIA creates important statutory rights that can be vindicated in court. There's no basis to say that some statutory rights are less important than others when we're talking about Article III standing and separation of powers. Not only that, but FOIA is cross-cutting for a reason which goes quintessentially to individuals and the executive power. That's exactly right, Your Honor. We're all supposedly entitled to see documents. Exactly, Your Honor. The second reason that this is a proper case is that our plaintiffs are proper plaintiffs. The government, I think, makes a big deal about the fact that our plaintiffs aren't banks subject to pervasive regulation by a financial regulator, for example. Take consumers research, for example. It is a consumer organization that's been around since 1929, focused on consumer protection issues. It is seeking information from the consumer product safety regulator. It has sent dozens of FOIA requests to the commission. It has multiple FOIA requests still pending. It intends to submit FOIA requests in the future. Third, the government makes a big deal about the fact that our plaintiffs voluntarily reached out to the commission through FOIA. But private parties reach out to the government all the time and ask the government for benefits or licenses, things like that. Take the facts of Saul v. Carr, a Supreme Court case from just a few years ago involving the Social Security Administration and another ALJ that was not constitutionally appointed. That was a case where an individual applied for benefits before the Social Security Administration. And everybody in that case understood that the plaintiff had a right to be in the agency that adjudicates her request for disability benefits would be constitutionally structured. So the fact that some individuals may voluntarily reach out to the government and others find themselves the subject of an enforcement action is an immaterial difference. Anyone who finds himself or herself subject to an agency's action has a right to insist that that agency is adjudicating his or her statutory rights with his or her discretion. I think what strikes me as a little odd in this case is you rely on the separation of powers violation for three sort of distinct purposes. One, it provides your cause of action for your first claim. Two, it provides your sole source of standing for that claim. And three, it's also the reason that you believe you should win on the merits on that claim. And I can't think of any other legal theory that does that much work, that plays all three of those roles. Can you think of one? I can just point the court to Free Enterprise Fund. I mean, that was a case just like ours where it's the exact same claim, it's the exact same theory of standing, and the plaintiff in that case was entitled to a standalone declaratory judgment on the separation of powers claim. And the court said, look, individuals who are subject to adjudication by an institutionally structured have standing because a separation of powers violation, as you know, creates a here and now injury that can be remedied in court. And so tying it back to 54B, because the district court granted a declaratory judgment on our separation of powers claim, that claim can stand alone under Free Enterprise Fund as a final judgment. Therefore, it's distinct from our separate FOIA and APA claims for relief. So the Collins issue doesn't affect that? It does not. The Collins issue arises under counts two and three, which, of course, are not before the court. All three of our claims for relief arise under three different causes of action. They seek to remedy different injuries, and they seek different relief that are ultimately tied to multiple recoveries. So the fact that we won under count one doesn't entitle us to relief under counts two or three. We have to prove additional things on the merits to win under counts two and three. So, Your Honor, you brought up the Texas ACA case. That's just like this case, where this court reviewed a district court's declaratory judgment under count one, even though there were related claims still pending in district court that relied on the success of count one for their relief. For example, count two in the Texas ACA complaint argued, because the individual mandate is unconstitutional, the rest of the ACA is unconstitutional. Another count was an APA claim, just like we have here. Because the ACA is unconstitutional, all the Affordable Care Act rules implemented by HHS fall as well. So it's really no different than the ACA case. Your Honor, you asked about Fifth Circuit precedent. Another case I would point the court to is H&W Industries, where there were one set of facts, but there were multiple antitrust claims. The one on appeal was a monopolization claim, even though there was a related antitrust claim still pending in district court. And this court said, the facts gave rise to multiple legal rights, different legal recoveries. And we have the same thing here. I'm happy to walk the court through in more detail why the three counts are related. I'm also happy to move on to the merits. I think you should move on. Thank you, Your Honor. So I've heard the government offer four reasons why this court should extend Humphrey's executor to cover the commission. And I'd like to walk through each of those reasons. First, the government believes that Humphrey's executor is controlling for all multi-member commissions. Because, in their view, the FTC of 1935 exercised executive power. But the Supreme Court squarely rejected that argument in footnote 4 of any form of executive power. It's not controlling for multi-member commissions like the Consumer Product Safety Commission that do exercise substantial executive power. Second, the government has misread SELA law as saying that the CFPB would be constitutional if Congress somehow converted the CFPB to a multi-member commission. But that's not what the Supreme Court said in dicta at the very end of the opinion after considering whether to extend its precedent to cover the CFPB. What the government proposes would, in fact, be impermissible under the reasoning of SELA law because the CFPB would not fit within the narrow Humphrey's executor exception if it were exercising substantial executive power in the status as a multi-member commission. Third, the government claims that Free Enterprise Fund blessed the removal restriction on the multi-member SEC. But the removability of the SEC commissioners was not even at issue in Free Enterprise Fund. There is no express for-cause removal statute applicable to the SEC commissioners. That case instead involved the removability of the multi-member accounting board, which reported to the SEC. And the court assumed that the SEC commissioners could only be removed for cause. And fourth and finally, the government argues that Humphrey's executor would be a dead letter if he ruled for us. But I think the court should focus on the agency before you, not speculate about other agencies that are not before the court. That's what the Supreme Court has done in all of its removal cases. In any event, it's not true that Humphrey's executor would be a dead letter if he ruled for us. The Supreme Court clarified the contours of the Humphrey's executor exception in SELA law. And that exception would continue to apply to multi-member commissions that don't exercise substantial executive power. Do you name any such commissions? Yes, Your Honor. I think to the come- Mr. McGann would like me to say ACUS, but I won't go there. The two I can think of would be the U.S. Sentencing Commission and the U.S. Commission on Civil Rights, which are multi-member commissions with for-cause removal protections that don't appear to exercise any executive power. There may be others, but those are the two that immediately come to mind. Your Honor, I'm happy to answer any other questions about the merits, Rule 54B. One final point I wanted to address, Judge Jones, since you brought it up, was the remand and retaining jurisdiction. I just want to make it clear for the Court that we have no intention of pursuing Counts 2 and 3 if this case ever does get back to the district court. So if you were to issue a limited remand and retain jurisdiction, we would amend the complaint to remove those claims, which the Court said would be appropriate to reach a final judgment in Williams v. Seidenbach on Bonk's decision from 2020. So we don't think there's any reason to be concerned about Rule 54B, but to the extent the Court wants to take that issue completely off the table, the Court could issue a limited remand, we would take those claims off the table, and this Court indisputably would have a final appealable judgment. And so perhaps a question for Mr. Freeman is whether he would consent to the amendment of the complaint to handle that. What do you say one of the amicus briefs said that perhaps we're still bound by Humphrey's executor, but in any event, the rulemaking in this case was clearly an exercise of the executive power, and under the twin characteristics that Humphrey's executor articulates, it would still be invalid? We do think the FOIA rule is invalid, but we don't think it's a question the Court needs to address in this appeal because Count 2 is not before the Court. All we're asking the Court to do is affirm the declaratory judgment that ensures that the commission will be constitutional going forward. So you don't need to address in this appeal any kind of retrospective questions about whether you need to vacate the FOIA rule, and as I said, we don't have any intention of pursuing those claims if this case ever were to go back to the district court. But to the broader question of whether Humphrey's executor is good law, the Supreme Court has continued to apply that exception. This Court needs to apply it to the facts of this case. As SELA law made clear, it's a narrow exception, and it only applies when you have a multi-member commission that is not exercising substantial executive power. And Mr. Freeman pointed to the SELA law decision, but a fair reading of that decision is that the Court first analyzed whether the CFPB fell within the exceptions, and it said it did not, one, because the CFPB is not multi-member, and second, because the CFPB does not exercise substantial executive power. What do you say about the, I mean, what's the implication of this if we say that Humphrey's executor does not apply to this multi-member agency? Is the implication that the President can remove all five of the, I think it's five, of the commissioners? Yes, Your Honor. And the commissioners would know that when they make decisions, like regulating gas stoves, that they're accountable to the President. And the President would know that he is on the hook for the commission's decisions. He can no longer evade responsibility for the commission's decisions, whether it's FOIA requests or regulating gas stoves. The President will know that he needs to exercise control over the commissioners. So, yes. Is it fair to, is it fair to distill the merits question as asking whether Humphrey's executor protects only the FTC, or does it protect both the FTC and identically structured agencies? I think you have to understand Humphrey's executor through the lens of that the President has unrestricted removal authority, two exceptions, Morrison and Humphrey's executor. And the Humphrey's executor exception only applies to agencies just like the FTC of 1935. That did not exercise any form of executive power. So the fact that other agencies may have the same structure as the FTC in terms of multi-member plus removal protections isn't enough, according to SELA law, for an agency, for a multi-member commission to fall within the Humphrey's executor exception. Because as the Supreme Court did in SELA law in Collins, you have to analyze the powers of the agency. So in the SELA law case, the commission analyzed the powers of the CFPB. It wasn't just the fact that the CFPB wasn't multi-member. It was multi-member plus substantial executive power made it fall outside the Humphrey's executor exception. So too here. We have multi-member agency here, but we also have an agency exercising substantial executive power. So therefore, it falls outside the Humphrey's executor exception. How many other agencies, and I should have looked at this beforehand, but following Humphrey's executor, I know that's supposed to be the Bible on administrative agencies, but how many challenges were brought against the composition of administrative agencies between, what, 1929 or whatever it was in the early 30s, excuse me, and the current era? So, Your Honor, we have Humphrey's executor, and then we have the Weiner case in 1958. And then the Supreme Court did not address removal protections for Intel Free Enterprise Fund. So I think one perhaps important feature to keep in mind in all of this is the historical record. So in seal of law, the Supreme Court considered whether they should extend their precedence to cover this new thing, this new independent single-headed agencies. This is not something this court can do, but I raise this history for a reason, which is that Humphrey's executor upheld an independent agency, the FTC, that didn't exercise any form of executive power, but it wasn't Intel after that, and then especially in the 1970s, that independent multi-member commissions, as you know. I was there. I handled one of the first recalls by the CPSC of the famous weed eaters. Well, they weren't accountable back then, and they're still not accountable today, Your Honor. I have no comment about that. So I think Mr. Freeman would like the court to believe that you're seriously disrupting the apple cart, and that multi-member commissions have gone all the way back to the founding. They have not. The first one was the ICC, as you know, in 1887. It's not clear what powers it actually exercised, but I think they were quite limited. Then you have the FTC of 1913, upheld in Humphrey's executor, but they exploded in the 1970s, and over time, Congress has expanded the powers of multi-member commissions. For example, the FTC's powers. What about all the rate-setting commissions? Right. Who set rates? It's not clear. Who set rates? It did. It's not clear when they were exercising those powers. I'm not sure if the ICC had that power originally in 1887, but thankfully, it's not a question you need to address in this case, because the commission clearly exercises . . . I guess any decision that one would make would have to be fact-specific, and Humphrey's executor said it was fact-specific, didn't it? Exactly. So did Celia Law. So did Collins. I see my time is up, Your Honor, but I'm happy to answer any further questions. Okay. Thank you. Thank you. All righty, Mr. Freeman. Thank you, Your Honor. Just a few points. First, on 54B, I think I heard my friend say that they're not pursuing . . . they don't want to pursue their remaining claims. I think that just underscores why this is not a proper 54B judgment. I agree that it may be that the cure is simple, but 54B is jurisdictional. The district court erred when . . . I don't understand why this is not a final judgment as to a declaratory judgment. Well, it was entered as a final judgment, but it was improperly entered that way, and this is the point that I'm . . . Why didn't you place that in the district court, then? We did, just not under the rubric of 54B. We objected . . . Well, it isn't, actually, Your Honor. I mean, I understand jurisdiction is our requirement, but this is a fairly big case, I suppose, and I think it only behooves the government to be as specific as possible. I do think we could have been more specific, but I'll just point this court to the Tetra Technologies case in this circuit, which raised and resolved a case in 54B grounds that no one had briefed. Same with the Liberty Mutual case in the Supreme Court. It is true subject matter jurisdiction, so the question is not forfeitable, and respectfully, we think the district court made a pretty clear error of law here. I mean, the district court said there was no just reason for delay. That's one of the requirements of 54B, because the same legal question recurs throughout the case. That's just an error of law. A case is not . . . it's not an independent claim because it's intertwined with other claims. That's the sort of reasoning you see under 1292B, where you have to find that a question is dispositive of the whole case. But under 54B, it was the district court's obligation to say this was an independent claim, and as I said at the outset, it can't be that it's independent if the district court rules for plaintiffs, but dependent if it rules for the government. So I think that's just an error of law, and we urge the court to vacate and remand on that. As to the merits, I have only just a few comments to make. I mean, when you asked my friend whether to name a couple agencies that would still be valid on his view, I mean, one that he did not mention was the Federal Reserve Board, and I think that's quite striking. I just think that tells you the scope of the question in this case. Do we really think that the Supreme Court in SALA law understood itself to be declaring the . . . are not subject to challenge? And he said the Sentencing Commission and the Civil Rights Commission. And you're saying the Federal Reserve would not be subject to challenge? I did not hear my friend dispute that the Federal Reserve Board exercises substantial executive power. I mean, Judge Bullitt asked him that. I didn't really ask that, but I'll take your point. And my point is just it's a really big question, and I don't think the Supreme Court thinks they've decided it. I think Justice Thomas's opinion makes clear that they don't think they've decided that. I don't think . . . you know, a lot of people thought that Shelby County v. Holder stood for more than it appeared to stand for. Or, not that one, the Mudd case, the Muddnode case, that preceded that Shelby County by about six years. That's right, and then Shelby County had to overrule it. Our point . . . But that's Section 4 of the Voting Rights Act. Right. I mean, these questions are for the Supreme Court to decide, is our point. And this is just like the National Coalition for Men case, the male-only draft case. In our view, the right thing to do here is for the court to say if it thinks that they're right about the reading of sale of law, the right thing to do is to say that we think this portends the overruling of Humphrey's executor. But that's for the Supreme Court to say. The final point I'll make is, respectfully, I think my friend, in over-reading sale of law, likes to pick the language about substantial executive authority, but takes no account of the language in Part 4 of the opinion about converting the CFPB to a multi-member agency. That language is in black and white there. It is as much part of the opinion as the language that they rely on, and it doesn't make sense under their theory. My friend says, oh, it doesn't stand for the proposition that it would be constitutional. Well, there wasn't some other claim in the case. There wasn't a statutory claim or regulatory claim that the court could have been referring to Congress curing. It said Congress could cure the constitutional problem we've identified, for example, by, for quote, for example, converting the CFPB into a multi-member agency. That's at 2211 of the opinion. But that's assuming they find it's turning into multi-member. That is true, Your Honor. And we will find out what the court thinks about that soon. Okay. Well, thank you very much. Thank you. Thank you.